**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>EDGEMARC ENERGY HOLDINGS, LLC, *et al.*,[1]<br><br>*Debtors*. | Chapter 11<br><br>Case No. 19-11104 (JTD)<br><br>(Jointly Administered) |
| ETC NORTHEAST PIPELINE, LLC<br><br>*Plaintiff and Counterclaim Defendant*,<br><br>vs.<br><br>EM ENERGY PENNSYLVANIA, LLC,<br><br>*Defendant and Counterclaim Plaintiff*. | Adv. Pro. No.: 19-50268 (JTD) |

**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO INTERVENE IN ADVERSARY PROCEEDING**

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the above-captioned Chapter 11 cases of EdgeMarc Energy Holdings, LLC and its affiliated debtors and debtors-in-possession (collectively, the "**Debtors**"), by and through their undersigned counsel, respectfully submits this motion (the "**Motion**"), pursuant to Rules 24(a) and (b) of the Federal Rules of Civil Procedure (the "**Federal Rules**"), made applicable here by Rule 7024 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Section 1109(b) of

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: EdgeMarc Energy Holdings, LLC (6900), EM Energy Manager, LLC (5334), EM Energy Employer, LLC (8026), EM Energy Ohio, LLC (6935), EM Energy Pennsylvania, LLC (1541), EM Energy West Virginia, LLC (3771), EM Energy Keystone, LLC (7506), EM Energy Midstream Ohio, LLC (1268), and EM Energy Midstream Pennsylvania, LLC (3963). The Debtors' corporate headquarters and mailing address is 1800 Main Street, Suite 220, Canonsburg, PA 15317.

title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**"), for entry of an order, substantially in the form attached hereto as **Exhibit A**, authorizing the Committee to intervene in the above-captioned adversary proceeding (the "**Adversary Proceeding**").  In support of this Motion, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1. Through this Motion, the Committee seeks to intervene in the litigation at the heart of these Chapter 11 Cases and this Adversary Proceeding: the litigation surrounding the Revolution Explosion between Debtor EM Energy Pennsylvania, LLC ("**EM PA**") and ETC Northeast Pipeline, LLC ("**ETC**").  As a result of the Committee's expansive investigation to date, the Committee believes that there are substantial claims and causes of action against ETC and its parent company Energy Transfer Operating, L.P. ("**ETO**").  In accordance with Federal Rule 24(c), the Committee's proposed complaint (the "**Proposed Complaint**") is attached hereto as **Exhibit B**.[2]  The Proposed Complaint will bring to the forefront the Committee's views on the claims and causes of action against ETC and ETO, including substantial claims and causes of action that remain un-asserted by the Debtors.  Absent Committee intervention, the claims and causes of action outlined in the Proposed Complaint may never be adjudicated or may be settled for *de minimis* value, sacrificing significant damages that may inure for the benefit of the Debtors' estates.

2. Under controlling Third Circuit precedent, the Committee may intervene as a matter of right under Federal Rule 24(a)(1) because it is unquestionably a "party in interest"

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Proposed Complaint.

under Bankruptcy Code Section 1109(b), which permits creditors' committees to appear and be heard in adversary proceedings. Moreover, the Committee may intervene as of right under Federal Rule 24(a)(2) because: (i) this Motion is timely, as the Adversary Proceeding is still in its infancy; (ii) the Committee has a direct interest in the outcome of the Adversary Proceeding and the claims outlined in the Proposed Complaint, as such outcome will determine whether substantial damages may inure to the benefit of the Debtors' estates and their creditors; (iii) the Committee's interests may be directly affected by the disposition of the Adversary Proceeding if the theories outlined in the Proposed Complaint are not considered or the litigation is settled at a deflated value; and (iv) the Committee's interests are not adequately represented unless it is permitted to intervene and be heard on the issues of this Adversary Proceeding, as the Debtors have, to date, failed to seek the full universe of claims and damages that may accrete to their estates or may be tempted to release the claims for little or no value.

3.  Finally, the Committee may also intervene permissively under Federal Rule 24(b)(1)(B) because the interests of the Debtors in the litigation at issue and the interests of the Committee in such litigation share common questions of law and fact. While the Committee, through the Proposed Complaint, outlines additional claims and causes of action against ETC and ETO, the issues, general facts and circumstances surrounding those claims are common, warranting permissive intervention.

## JURISDICTION AND VENUE

4.  The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 1334 and 157(b)(2) and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.

5.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.

7. The statutory bases for the relief requested herein are Section 1109(b) of the Bankruptcy Code and Federal Rule 24, made applicable by Bankruptcy Rule 7024.

**STATEMENT OF FACTS**

**A.    Procedural Background.**

8. On May 15, 2019 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under the Bankruptcy Code. By order of the Court, the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered.

9. Since the Petition Date, the Debtors have continued to operate and manage their businesses as debtors-in-possession pursuant to Bankruptcy Code Sections 1107(a) and 1108. No trustee or examiner has been appointed in the Chapter 11 Cases.

10. On May 29, 2019, the Office of the United States Trustee for the District of Delaware formed the Committee in these Chapter 11 cases. *See Notice of Appointment of Creditors' Committee* [Docket No. 114].

**B.    The Debtors' Assets And The Revolution Explosion.**

11. The Debtors conduct their drilling and exploration activities in Pennsylvania and Ohio. The Debtors control contiguous positions of approximately 45,000 net acres, consisting of:

- Approximately 32,000 net core acres in Butler County, Pennsylvania (divided into two production areas, "Butler North" (approximately 21,000 acres) located in the northeast corner of Butler County, and "Butler South" (approximately 11,000 acres) located in central Butler County) (the "**PA Assets**"); and

- Approximately 11,000 net acres in Monroe County, Ohio and approximately 2,000 net acres in Washington County, Ohio.

See *Declaration Of Callum Streeter In Support Of The Debtors' Chapter 11 Petitions And First Day Pleadings* [Docket No. 3] at ¶ 20.

12. When flowing, the Pennsylvania operations accounted for approximately 50 million net cubic feet per day (MMcfd), or approximately one third of the Debtors' existing production capacity. Id. ¶ 9.

13. On September 10, 2018, a segment of the High-Pressure Pipeline, a component of the Revolution System that ETC was constructing for the processing and transport of EdgeMarc's natural gas realized from the PA Assets, slid down a hill and exploded. Id. ¶ 6.

14. On January 29, 2019, due to the Revolution Explosion and ETC's subsequent refusal to allow EdgeMarc to flow gas through the Revolution System, the Debtors were forced to shut in production and cease operation at all of its Butler County, Pennsylvania wells. The Debtors' production has fallen by over one-third since the shut-in due to the Revolution System Explosion. Id. ¶ 22. In addition, due to the Revolution Explosion and ETC's resulting failure to meet the Guaranteed In-Service Date, EdgeMarc terminated the Amended ITCs. Id. ¶ 43.

      **C.**    **The Adversary Proceeding.**

15. Following EdgeMarc's termination of the Amended ITCs, ETC filed a complaint against EM PA on February 7, 2019, in the Court of Common Pleas of Allegheny County, Pennsylvania alleging that EdgeMarc had failed to pay for amounts allegedly due under the Amended ITCs and seeking a declaration that the termination of the Amended ITCs was not valid because ETC met the Guaranteed In-Service Date. See ETC Northeast Pipeline, LLC v. EM Energy Pennsylvania, LLC, No. GD-19-002052 (Ct. Com. Pl., Allegheny Cnty., Feb. 7, 2019) (the "**Pennsylvania Litigation**").

16.     On February 27, 2019, EM PA filed an answer and counterclaims in the Pennsylvania Litigation alleging that ETC had breached the Amended GPA and Amended ITCs by failing to put the Revolution System in commercial service by the Guaranteed In-Service Date and failing to gather and process EdgeMarc's required volumes upon nomination (the "**EM PA Counterclaims**").  The EM PA Counterclaims also sought a declaratory judgment that: (i) the Amended ITCs had been validly terminated as of January 29, 2019; and (ii) ETC had improperly issued invoices under Amended ITC-101.

17.     The Pennsylvania Litigation was removed and transferred to this Court on June 28, 2019, creating this Adversary Proceeding.

### D.   The Committee's Rule 2004 Investigation.

18.     On June 12, 2019, in order to fully investigate the value and extent of the Debtors' claims against ETC and ETO, the Committee filed the *Emergency Motion Of The Official Committee Of Unsecured Creditors For Leave To Conduct Discovery Of ETC Northeast Pipeline LLC Under Rule 2004 Of The Federal Rules Of Bankruptcy Procedure* [Docket No. 167] (the "**2004 Motion**"). To date, the Committee has reviewed over 24,000 documents produced by the Debtors, ETC, ETO, and others, and taken five depositions of various ETC and ETO witnesses.

19.     While the Committee agrees with the EM Counterclaims in that they assert causes of action against ETC for breach of contract, the Committee's investigation has identified substantial additional grounds on which ETC and ETO may be held liable.  Further, as the Committee's approximately 70-page Proposed Complaint makes clear, the Committee believes it is essential that it be allowed to intervene so as to ensure that the full universe of claims and resulting damages inuring to the estates can be evaluated by this Court.

**RELIEF REQUESTED**

20. The Committee seeks an order of this Court authorizing the Committee to intervene in this Adversary Proceeding pursuant to Bankruptcy Rule 7024 and Federal Rule 24 so that it may raise and be heard on any issue in the Adversary Proceeding, including the claims and causes of action raised in the Proposed Complaint.

**ARGUMENT**

**I.    The Committee Has An Absolute Right To Intervene Under Federal Rule 24.**

21. Under Federal Rule 24(a) and Bankruptcy Rule 7024, intervention is mandatory on timely motion under either of two independent grounds: (i) where the proposed intervenor "is given an unconditional right to intervene by a federal statute"; or (ii) where the proposed intervenor "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a); Bankr. R. Civ. P. 7024. Federal Rule 24 should be interpreted liberally in favor of intervention. ACR Energy Partners, LLC v. Polo N. Country Club, Inc., 309 F.R.D. 191, 192 (D. N.J. 2015) ("Courts, however, liberally construe Rule 24(a) in favor of intervention.") (citations omitted). The Committee readily satisfies the requirements of either standard.

### A. The Committee Has An Unconditional Right To Intervene Pursuant To Rule 24(a)(1) And Bankruptcy Code Section 1109(b).

22. Federal Rule 24(a)(1) mandates intervention on timely motion[3] where the proposed intervenor "is given an unconditional right to intervene by a federal statute." Fed. Rule. Civ. P. 24(a)(1). The federal statute granting the Committee an unconditional right to intervene in this Adversary Proceeding is Section 1109(b) of the Bankruptcy Code, which provides that "[a] party in interest, including . . . *a creditors' committee* . . . may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. 1109(b) (emphasis added).

23. The Third Circuit has concluded that adversary proceedings fall within the ambit of a "case" as defined in Bankruptcy Code Section 1109(b), and that the statute thus provides creditors' committees with an unconditional statutory right to intervene in adversary proceedings under Federal Rule 24(a)(1). See Official Unsecured Creditors' Comm. v. Michaels (In re Marin Motor Oil, Inc.), 689 F.2d 445, 450-51 (3d Cir. 1982) (recognizing a creditors' committee's unqualified right to intervene in an adversary proceeding under Section 1109(b) of the Bankruptcy Code and holding that the term "case" as used in Section 1109(b) includes adversary proceedings); Phar-Mor, Inc. v. Coopers & Lybrand, 22 F.3d 1228, 1232 (3d Cir. 1994) (same); In re Money Ctr. of Am., Inc., 544 B.R. 107, 112 (Bankr. D. Del. 2016) ("The Third Circuit has held that § 1109(b) provides an unconditional statutory right to intervene in adversary proceedings under Rule 24(a)(1)."); see also In re Stone & Webster, Inc., 373 B.R. 353, 361 (Bankr. D. Del. 2007) ("Courts generally interpret § 1109 broadly to allow interested

---

[3] The timeliness of the Motion is also a requirement under Federal Rule 24(a)(2) and is addressed *infra* at Part I.B.

8

parties to intervene in adversary proceedings."). Citing to <u>Marin</u> as controlling precedent, courts within the Third Circuit have applied <u>Marin</u> to allow official committees unqualified rights to intervene in adversary proceedings. <u>See, e.g.</u>, <u>In re Allegheny Int'l, Inc.</u>, 107 B.R. 518, 525 (W.D. Pa. 1989) (following <u>Marin</u> and affirming equity committee's unqualified right to intervene in adversary proceeding under Bankruptcy Code Section 1109(b) and Federal Rule 24(a)(1)).

24. Thus, there is no dispute that the Committee is entitled to intervene in this Adversary Proceeding under Federal Rule 24(a)(1) and pursuant to Bankruptcy Code Section 1109(b), which specifically lists "a creditors' committee" as an example of a party in interest entitled to appear and be heard on "any issue in a case" under Chapter 11.

**B.  Alternatively, The Committee Satisfies All Requirements To Intervene As A Matter Of Right Under Federal Rule 24(a)(2).**

25. The Committee also meets all of the requirements for intervention as a matter of right under Federal Rule 24(a)(2), applicable here through Bankruptcy Rule 7024. The Third Circuit has interpreted Federal Rule 24(a)(2) to permit intervention as of right when a movant establishes four elements: (a) a timely application for leave to intervene; (b) a sufficient interest in the litigation; (c) a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action; and (d) inadequate representation of the prospective intervenor's interest by existing parties to the litigation. <u>Kleisser v. U.S. Forest Serv.</u>, 157 F.3d 964, 969 (3d Cir. 1998); <u>SWE & C Liquidating Tr. v. Saudi Arabian Oil Co. (In re Stone & Webster, Inc.)</u>, 373 B.R. 353, 362 (Bankr. D. Del. 2007). Each of these elements is present here.

26. First, the Committee's Motion is timely because the Adversary Proceeding is in its infancy and no substantive matters have been adjudicated. The Third Circuit has decreed that

in order to determine whether an intervention motion is timely, courts are to consider: (1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay.  See Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc., 72 F.3d 361, 369 (3d. Cir. 1995) (holding that intervention after four years was timely because, while some written discovery had occurred, no dispositive motions had been filed and no decrees had been entered, and therefore intervention would not prejudice current parties); see also In re Money Ctr. of Am., Inc., 544 B.R. at 114-115 (finding intervention motion timely where delay would not prejudice plaintiffs because plaintiffs' claims were protected from accrual of Debtors' professional fees and proposed complaint rested on similar facts and legal theories).  The first two factors are generally evaluated together "because the stage of the proceeding is inherently tied to the question of the prejudice the delay in intervention may cause to the parties involved." Mountain Top, 72 F.3d at 370.

27.    Here, the Adversary Proceeding is at an early stage: no substantive matters have been adjudicated, and no dispositive motions have been filed.  Moreover, the Committee's intervention will not require any stay of the proceedings or any relief that would require a delay in proceedings.  The Committee, in conjunction with the Debtors, has already conducted an extensive investigation and discovery regarding the Debtors' claims against ETC and ETO, further limiting the delay and prejudice on other parties as a result of discovery.  Therefore, the Committee's Motion is timely.

28.    Second, the Committee has a sufficient interest in the Adversary Proceeding to establish its entitlement to intervene.  A would-be intervenor "must demonstrate that there is a tangible threat to a legally cognizable interest to have the right to intervene." Id. at 366 (internal quotation marks and citation omitted).  As a fiduciary for all unsecured creditors,

the Committee owes a duty to ensure that maximum value accretes to the Debtors' estates. The Committee seeks to be an active participant in this Adversary Proceeding, including bringing to light the substantial claims and causes of action outlined in the Proposed Complaint. The Committee has an interest in appearing and being heard in order to obtain maximum value for the benefit of unsecured creditors. Indeed, unsecured creditors have the most at stake in this Adversary Proceeding, as it presents the only additional source of substantial value aside from a sale of the Debtors' assets. The Committee therefore has a direct interest in the outcome of the Adversary Proceeding.

29. Third, the Committee's interest will be impaired if it is not allowed to participate in this Adversary Proceeding. Impairment exists where an intervenor's interest "*might* become affected or impaired, as a practical matter, by the disposition of the action in their absence." Mountain Top, 72 F.3d at 368 (emphasis in original). In determining whether an interest may be affected or impaired within the meaning of Federal Rule 24(a)(2), the court must assess "the practical consequences of the litigation," and "may consider any significant legal effect on the applicant's interest." Brody By and Through Sugzdinis v. Spang, 957 F.2d 1108, 1123 (3d Cir. 1992). The Adversary Proceeding, as it currently stands, threatens to impair the interests of the Committee by failing to consider the full universe of potential claims and causes of action against ETC and ETO. Without the Committee's participation, there is risk that the Debtors' estates will not realize the full value of the claims against ETC and ETO. Moreover, as expressed in the Committee's DIP Objection, the Committee is concerned that the Debtors may seek to settle the Adversary Proceeding and related claims for minimal or no value in connection with a sale of the PA Assets. The impact on distributions to unsecured creditors that could result

from the Adversary Proceeding surely constitutes a significant practical and legal effect on the interest the Committee.

30. Fourth, the existing parties cannot protect the interests of unsecured creditors in the Adversary Proceeding. The Committee's burden as to this factor is minimal: a proposed intervenor need only show that representation of its interests in the proceeding "may be" inadequate. Mountain Top, 72 F.3d at 368-369 (quoting Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972)). "If the interest of the absentee is not represented at all, or if all existing parties are adverse to him, then he is not adequately represented." Id. (internal quotations omitted). Here, the Debtors are required by the DIP Order to close a sale of the PA Assets that pays off KeyBank's obligations in full. If the Debtors receive a bid that is just a peppercorn above these obligations and requires a release of claims against ETC and ETO, the Debtors may feel compelled accept such bid in order to avoid a DIP default. Therefore, the Debtors, including EM PA, cannot adequately protect the interests of unsecured creditors.

31. The Committee's mandate is to ensure that the interests of the Debtors' unsecured creditors are fully represented in these Chapter 11 Cases. Because the Committee readily satisfies all four elements necessary to establish its entitlement to intervene under Rule 24(a)(2), the Motion should be granted.

**II.     The Committee Satisfies All Requirements For Permissive Intervention Under Federal Rule 24(b)(1)(B).**

32. While the Committee is entitled to intervene as a matter of right for the reasons set forth above, in the alternative, the Committee may be granted leave to intervene permissively under Federal Rule 24(b)(1)(B). That rule provides that "[o]n timely motion, the court may permit anyone to intervene who . . . (B) has a claim or defense that shares with the main action a

common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "In order to satisfy the requirements of this rule, the interest of the proposed intervenor need not be related to the property or transaction at issue, but merely 'have a question of law or fact in common with it.'" <u>Allentown Cement Co., Inc. v. Hong Sung Indus. Co., LTD. (In re United Minerals and Grains Corp.)</u>, 76 B.R. 991, 995 (Bankr. E.D. Pa. 1987). Federal Rule 24(b)(3) adds that "in exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

33. Here, as set forth in the Proposed Complaint and the EM Counterclaims, the Committee and EM PA maintain similar claims and causes of action exist against ETC, and these claims and causes of action turn on shared questions or law and fact. It is in the interest of judicial economy for this Court to allow the Committee to intervene on a permissive basis to afford the Committee the opportunity to be heard and express its position on these claims and issues. Additionally, for the reasons stated above, intervention will not delay or prejudice the adjudication of the parties' rights given the very early stage of the Adversary Proceeding and the fact that the Committee already has been involved in discovery relating to the EM PA Counterclaims out of which the commencement of this Adversary Proceeding arises. Allowing intervention will aid the Court in reaching a proper resolution of the issues raised in this Adversary Proceeding.

## **CONCLUSION**

Based on the foregoing, the Committee should be allowed to intervene in the Adversary Proceeding. Accordingly, the Committee respectfully requests that this Court enter an order, substantially in the form attached hereto, allowing the Committee to intervene in the Adversary Proceeding.

Dated: September 12, 2019
Wilmington, Delaware

        **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

        */S/ Robert J. Dehney*
        Robert J. Dehney (No. 3578)
        Eric D. Schwartz (No. 3134)
        Andrew R. Remming (No. 5120)
        Eric W. Moats (No. 6441)
        1201 North Market Street, 16th Floor
        P. O. Box 1347
        Wilmington, DE 19899-1347
        Telephone: (302) 658-9200
        Email:   rdehney@mnat.com
                     eschwartz@mnat.com
                     aremming@mnat.com
                     emoats@mnat.com

        - and -

        **BROWN RUDNICK LLP**
        Robert J. Stark (admitted *pro hac vice*)
        Sigmund S. Wissner-Gross (admitted *pro hac vice*)
        Kenneth J. Aulet (admitted *pro hac vice*)
        Andrew M. Carty (admitted *pro hac vice*)
        Justin G. Cunningham (admitted *pro hac vice*)
        Seven Times Square
        New York, NY 10036
        Telephone: (212) 209-4800
        Email:   rstark@brownrudnick.com
                     swissnergross@brownrudnick.com
                     kaulet@brownrudnick.com
                     acarty@brownrudnick.com
                     jcunningham@brownrudnick.com

        - and -

        Steven D. Pohl (admitted *pro hac vice*)
        One Financial Center
        Boston, MA 02111
        Telephone: (617) 856-8200
        Email:   spohl@brownrudnick.com